**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          NORTHERN DISTRICT OF CALIFORNIA
10
11    JAMES PARKER,                          No. C 03-4980    JL
12              Parker,                      **ORDER GRANTING DEFENDANT'S**
                                             **MOTION FOR SUMMARY JUDGMENT**
13         v.                                **(Docket #23, 50) and DENYING**
                                             **PLAINTIFF'S MOTION FOR SUMMARY**
14    KEMPER INSURANCE CO.,                  **JUDGMENT (Docket # 17, 52)**
15              Defendants.
      _____/
16
17
                                   **Summary**
18
19         James Parker quit working for Verizon because his doctor recommended it. He was
20    HIV positive, suffering from fatigue and diarrhea, possibly related to his HIV medication. He
21    was psychologically fragile, nervous, disorganized, angry. Verizon's disability insurance
22    plan paid him benefits while the administrator reviewed his claim and he received benefits
23    from May 23 to September 2, 2002.
24         The plan denied his claim for continued short term disability benefits because his
25    treating physician and psychologist didn't provide adequate objective evidence that he was
26    disabled beyond September 3, 2002. They provided only a narrative of Plaintiff's own
27    reports of his symptoms – no tests, no objective findings, no progress notes by either the
28    physician or the psychologist.

1    Plaintiff appealed and the appeal was denied. He filed this lawsuit. This Court

2  considered the parties' cross-motions for summary judgment in 2004 and granted Parker a

3  second chance – remanding his case to the plan for consideration by different reviewers.

4  The Court also gave Parker the opportunity to submit more documentation in support of his

5  claim.  His second appeal was also denied. He and defendants both renewed their motions

6  for summary judgment which are now before the Court.

7    ERISA and the plan give the administrator discretion to allow or deny claims.  To

8  grant Parker's motion the Court must find that the plan administrator acted arbitrarily and

9  capriciously and that the decision to deny Parker's short-term disability benefits beyond

10  September 3, 2002 was unreasonable.

11    Parker applied for Social Security disability and was found eligible in May 2002, but

12  the standards and procedures for Social Security are different from ERISA. In particular, an

13  Administrative Law Judge considering a claim for Social Security disability benefits is

14  subject to the "treating physician rule", which requires deference to the opinion of the

15  treating physician. There is no such rule under ERISA. The opinion of the treating physician

16  is just one factor to consider in deciding whether an administrator's decision is reasonable.

17    In this case, although Parker's treating physician and psychologist believe he is

18  disabled, they failed to provide objective evidence of his disability beyond September 3,

19  2002, even after being given a second opportunity to do so. The reviewers found the

20  absence of objective evidence compelled them to deny Parker's claim. The terms of the

21  plan require adequate documentation of a claimant's disability. For the reviewers to deny

22  Parker's claim, when it was not supported by objective evidence, is not unreasonable. The

23  administrator did not act arbitrarily or capriciously in denying Parker's claim for benefits.

24  Therefore, the Court must grant Defendant's motion for summary judgment and deny

25  Plaintiff's.

26

27

28    **Introduction**

United States District Court

For the Northern District of California

This Court has jurisdiction over this case pursuant to the Employee Retirement Security Income Act ("ERISA") 29 U.S.C. §1001 *et seq.* Both parties consented to this Court's jurisdiction as provided by 28 U.S.C. §636(c) and Civil Local Rule 73. The issue before the Court in the parties' cross-motions for summary judgment is whether Defendant Kemper National Services  ("KNS" or "Defendant"), since succeeded by Broadspire, unreasonably denied Plaintiff's claim for short-term disability benefits beyond September 3, 2002.

Under ERISA, where the plan administrator has discretionary authority.  To overturn an administrator's decision a plaintiff must show that the decision was arbitrary and capricious.  While Plaintiff in the case at bar refers the Court to the differences between the conclusions of his treating physician and psychologist and the reviewing physicians and psychologist, Plaintiff does not show that the decisions of two separate reviewers were unreasonable.  Therefore, Plaintiff cannot demonstrate that the administrator made an arbitrary and capricious decision when it denied Plaintiff's claim and his appeals.

### Factual Background

Plaintiff James Parker suffers from AIDS and from mental health problems.  (Ostly 2004 Declaration Ex. A, AR 008-009). [1]  On May 23, 2002, Parker reported to his employer, Verizon Wireless ("Verizon") that his treating physician, William Owen, M.D., recommended that he stop working due to disability.  Thereafter, Parker began the process of applying for Short-Term Disability ("STD") benefits.  Parker had worked for Verizon (and companies purchased by Verizon) for approximately 10 years.

Verizon's STD Plan claims administrator is Kemper National Services ("KNS").  The Insurance provider for this plan is Defendant Lumbermens Mutual Casualty Company ("Lumbermen's," sued herein as "Kemper Insurance" and succeeded by Broadspire).

_____

[1] Plaintiff's counsel Thomas Ostly filed Declarations in support of Plaintiff's motions for summary judgment in 2004 and again in 2005 (Docket # 20 and Ex. 1 to Docket # 52). The portions of the Administrative Record referred to in the 2004 Declaration are designated "AR." The portions of the Administrative Record referred to in the 2005 Declaration are designated "STD." The Administrative Record is the only compendium of facts to which the parties would stipulate. See Joint Statement of Undisputed Material Facts (Docket # 24).

The Verizon Wireless Manager Disability Summary Plan Description provides:

Short-term Disability (STD) Benefits

"The STD benefits under the managed disability plan provide you with a percentage (either 100% or 60% depending on your *Length of Service* with Verizon Wireless) of your *STD Eligible Pay* for up to 26 weeks per disability. You may be eligible for the STD plan if you have an illness, injury or condition that causes a physical or mental change that prevents you from working.

Examples might include but are not limited to:

- Accidental injury,
- Mental illness,
- Substance abuse, or
- Pregnancy.

Note: Your eligibility for STD benefits focuses on your ability to perform your occupation or a reasonable accommodation or alternative thereto. However, your ability to get to and from your work place is not a consideration of your eligibility to receive STD benefits. . .

If Kemper does not continue to certify your disability absence, your STD benefits will stop. You and your *Physician* may agree that you are unable to work, but Kemper is the Claim Administrator and has discretionary authority to determine whether you are disabled and entitled to STD benefits. Thus, Kemper is responsible for the certification of your disability.

Your checks may also be suspended if your *Physician* does not provide Kemper with continued information about your disability. . .

TERMINATION OF BENEFITS

Disability benefits terminate on the first to occur of:
. . .

6.    The date you fail to provide written proof of your Disability that we determine to be satisfactory;

Verizon Wireless Manager Disability Summary Plan Description, Ex. 1 to Defendant's

Notice of Motion and Motion for Summary Judgment, filed September 14, 2004 (Docket #

23)

As stated in the plain language in the plan excerpt above, the terms of the plan give

Kemper discretion to administer the plan and make it clear that if a claimant's physician

fails to provide continued information about his disability his benefits will be suspended. An

employee is eligible for STD benefits if he has "an illness, injury or condition that causes a

physical or mental change that prevents him from working." The plan explains this standard

**United States District Court**
For the Northern District of California

1   by stating that "eligibility for STD benefits focuses on your ability to perform your occupation

2   or a reasonable accommodation or alternative thereto." According to the terms of the plan,

3   KNS as the claims administrator has "discretionary authority to determine whether [the

4   employee] is disabled and entitled to STD benefits." The plan also provides that disability

5   benefits terminate on the date a plan participant fails to provide satisfactory proof of his or

6   her disability. *Id.*

7        Parker was granted disability benefits from May 23, 2002 to September 2, 2002.

8   (Ostly 2004 Decl., Ex. A, AR 018).  His benefits were discontinued because he and his

9   health care providers failed to provide updated medical documentation of his disability

10   beyond September 3, 2002.  *Id.* at AR 026.  See also June 19, 2002 letter from Kemper to

11   Plaintiff regarding four telephone calls to Carl Stein requesting "objective medical

12   information," needed to be received by June 12, 2002 to avoid suspension of Plaintiff's

13   claim process (Ex. 2 to Lumbermen's motion for summary judgment filed 9-17-2004, AR

14   011).  Parker was notified of the termination of his claim in writing on November 1, 2002.

15   (*Id.* AR 026-027).  He was informed that he could appeal the decision provided he supply

16   KNS with additional medical information documenting his disability, including "office notes,

17   diagnostic test results, physical therapy notes, X-ray reports, CPS scans and EMGs (if

18   applicable), progress notes, and consultation reports."  (*Id.*).

19        On November 11, 2002, Counsel for Parker contacted KNS to request a copy of

20   Parker's file and to notify them of Parker's intent to appeal the decision to discontinue his

21   benefits.  (*Id.* at AR 028, 030). The letter also stated that Parker would provide KNS with

22   the required additional medical information once he received a copy of his file.  (*Id.*).

23   Parker's counsel followed up with another letter on December 16, 2002 (Ostly 2004 Dec.,

24   Ex. A, at AR 039). Parker did not receive a copy of his file until approximately January 15,

25   2003, nearly two months after the initial request.  (*Id.* at AR 045).

26        On January 15, 2003 Dr. Glassman recommended that KNS deny Parker's

27   application for benefits. (Ostly 2005 Declaration, Ex. A, STD 0629).  On January 16, 2003

28   KNS gave Parker a one-month extension of time to submit additional documentation (*Id.* at

AR 046).

On February 14, 2003, Parker submitted additional medical documentation to KNS, along with a request that any additional peer review be by a physician experienced with HIV/AIDS. (*Id.* at AR 048). These documents included (1) a letter from Carl Stein, a physician's assistant or "P.A." working for Dr. Owen, who was one of Parker's treating physicians, describing his treatment of Parker from 1998-2002 (*Id.* at AR 049), (2) a Mental Disorder Questionnaire Form submitted by Dr. Scott Wirth, Parker's treating psychologist (*Id.* at AR 051-056), (3) a letter from Parker's landlord, Eric Moldovan, confirming Parker's functional limitations (*Id.* at AR 050), and (4) a notice of award of Social Security Benefits. Ex. 2 to Lumbermen's motion for summary judgment, filed 9-14-2004 AR058 *et seq.*

After receiving these new materials, Dr. Glassman conducted a second peer review on March 5, 2003, and again found that Parker did not qualify for disability benefits during the period in question. (2004 Ostly Dec., Ex. A, AR 063-066) Dr. Glassman's recommendation for denial of benefits references the incorrect job title for Parker.[2]

All of the materials provided by Parker and Dr. Glassman's two independent peer review reports were submitted to the Verizon's Short-Term Disability Appeals Committee. The Appeals Committee upheld Dr. Glassman's determination that Parker was not entitled to disability benefits beyond September 3, 2002. Parker received notice his appeal was denied on March 14, 2003. At that point, Parker had exhausted all mandatory appeal procedures under the STD plan.

**Procedural Background**

On November 10, 2003, Parker filed suit against Kemper Insurance for breach of contract. Subsequently, in mid-September of 2004, both sides filed motions for summary

---

[2] Dr. Glassman references Parker's occupation as "CSR" (Customer Service Representative). Parker's actual position was that of "Senior Project Manager." Parker argues that Senior Project Manager is a much more difficult and demanding position. (Plaintiff's 2004 MSJ (Docket # 17), pg. 13).

**United States District Court**
For the Northern District of California

1    judgment. After the hearing on those motions, this Court remanded Plaintiff's application for

2    short-term disability benefits for reconsideration by a different doctor.

3         Plaintiff was ordered by the Court to comply with the letter dated November 1, 2002

4    from KNS which details the type of objective evidence required in making a valid claim for

5    Short-term Disability Benefits. Ex. 2 to Lumbermen's motion for summary judgment filed 9-

6    14-2004, AR026-027 (asking Parker to submit "objective medical information such as

7    progress notes and diagnostic/psychological test results"). Defendant was ordered to obtain

8    a review by a doctor other than Dr. Glassman, and to be conducted with Parker's

9    appropriate job title and description in mind. (Order issued December 15, 2004, Docket #

10    34).

11         The Peer Review service also instructed the reviewers to "address any impact

12    claimant's prescribed medications may have had on his functionality during the time period

13    in question." (Ex. A. To 2005 Declaration of Thomas Ostly, at STD 0637).

14         Nelson Zide, M.D., a specialist in infectious diseases, reviewed Parker's claim and

15    the medical record.  Dr. Zide determined that Parker's HIV/AIDS diagnosis alone did not

16    support his claim of functional impairment. In fact, Dr. Zide found that although Parker was

17    HIV positive prior to 1997, he presented insufficient medical evidence, such as AIDS-

18    defining illnesses or CD4 criteria or current viral load, to confirm a diagnosis of AIDS.  Nor

19    did Parker offer records reflecting any associated illnesses except for diarrhea and

20    psychological/psychiatric difficulties.  "[A]ll the laboratory data available suggests otherwise

21    unremarkable blood counts, chemistries and as noted high CD4 cell counts and

22    undetectable viral loads on this current [drug] regimen."

23         Dr. Zide considered Parker's correct job responsibilities. "The claimant works as a

24    senior member of the applications staff in information technology. He is required to provide

25    technical leadership, evaluate and develop reliable and efficient automated solutions to

26    fulfill complex business requirements and interact with a number of other employees. . .

27    The physical activity component of the claimant's position appears to be sedentary to light

28    in nature." Dr. Zide found insufficient evidence to support Parker's claim that he cannot

perform his job due to disability. "There is a paucity of physical exam data and there is no

United States District Court

For the Northern District of California

1  examination data that would support the claimant's inability to support the above tasks."

2  (Ostly 2005 Dec., Ex. A, STD 0629-0633)

3       The same medical record was also reviewed by Elana Mendelssohn, Psy.D., a

4  specialist in clinical psychology and neuropsychology.  Dr. Mendelssohn found that

5  Parker's claims of panic attacks, major depression and obsessive compulsive disorder did

6  not indicate that he could not perform his job functions. Dr. Mendelssohn also considered

7  Parker's correct job description. She listed what objective evidence would suffice and

8  specifically found that he does not verify negative medication side effects. Rather, his anti-

9  depressant medication was helpful. (*Id.* at STD 0635-0640).

10      Dr. Mendelssohn concluded as follows:

11

12       The submitted documentation indicates that the claimant was out of work
         secondary to depression, anxiety, and obsessive-compulsive disorder.
13       However, in reviewing the relevant documentation to the specific time frame
         in question, there is generally a lack of examination findings and behavioral
14       observations substantiating the presence of impairment in cognitive,
         emotional, or behavioral impairment. Rather, it appears that the
15       documentation largely consists of self-report complaints from the claimant. As
         such, it cannot be substantiated that the claimant was experiencing a level of
16       impairment that was interfering with his ability to perform his occupation as a
         senior project manager from 9/3/02 through 11/21/02.

17       Additional documentation could include results of a formal mental status
         examination, performance based tests of psychological functioning with
18       standardized scores, or specific behavioral observations with the frequency,
         duration and intensity of symptoms observed. The claimant's therapist's office
19       notes may be able to provide such information.

20       There was no report of medication side effects impacting the claimant's
         functionality during the time period in question. Rather, the claimant indicated
21       that his antidepressant medication was helpful.

22  (Ex. A to Ostly 2005 Declaration, STD 0640)

23      These findings, along with the review conducted by Dr. Glassman during the original

24  claims process, were submitted to the Verizon Wireless Short-Term Disability Appeal

25  Committee. The Committee concluded that the medical record and the physicians' findings

26  did not indicate Parker was disabled beyond September 3, 2002, as defined by the terms of

27  the  short-term disability benefit plan.

28       After the decision of the Peer Review panel following remand by this Court, Plaintiff

    and Defendant both renewed their motions for summary judgment.

United States District Court
For the Northern District of California

**Legal Argument**

**Defendant's Argument**

Defendant moves for summary judgment on the grounds that Plaintiff cannot meet the high threshold required to overturn the administrator's denial of benefits.  Specifically, in applying an abuse of discretion standard, the court may only look at the Administrative Record and may not alter the findings of the Administrator, unless the court determines that the decision was arbitrary and capricious.  *Firestone v. Acuson Corp. LTD Plan*, 326 F. Supp. 2d 1040 (N.D. Cal. 2004).  A decision to deny benefits arrived at on any reasonable basis is not arbitrary or capricious.  *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004).

Defendant argues that the reviewing medical examiners sufficiently analyzed the medical records, which did not support a finding of functional impairment related to Plaintiff's condition that would prevent him from performing the core elements of his occupation.  Defendant also argues that both the Court and the administrator gave Plaintiff sufficient time to submit additional medical information for inclusion in the record.  Finally, Defendant disagrees with Plaintiff's argument that a claim is improperly reviewed where the insurer does not conduct an independent medical examination.  *Donatiello v. Hartford Life and Acc. Ins. Co.*, 344 F. Supp. 2d 575, 580-582 (E.D. Mich. 2004) (construing the terms of the disability benefit plan to place the burden of proof on the insured to show disability) .

**Plaintiff's Argument**

Plaintiff claims that Defendant's denial of his application for short term disability benefits was arbitrary and capricious.

First, he argues that Defendant did not provide him with a timely copy of his file after his initial request, which prevented him from understanding the basis for denial of his claim. Parker argues that the administrator had a duty to mail him a copy of the initial decision within thirty days after he requested it.  He received it sixty-five days after his first of three requests.  After the appeal Parker made five separate requests for a copy of the decision

1   and received it sixty days after his initial request.  Parker argues that the delays were

2   prejudicial and prevented him from rectifying the problems with his claim.

3        Second, Parker argues that Defendant ignored the diagnosis and recommendation

4   of Parker's treating physician and psychologist without any contradicting medical evidence

5   and without requesting an independent medical examination of Parker.  He asserts that

6   plan administrators may not disregard the opinion of a treating physician in the absence of

7   contrary medical evidence.  *Curtin v. Unum Life Insurance*, 298 F. Supp. 2d 149 (D.Me.

8   2004) (requiring an independent medical examination where the reviewer misinterpreted

9   the finding of the treating surgeon as finding a claimant not disabled when the surgeon had

10  found that the claimant was disabled), *Cook v. Liberty Life Assurance Co. of Boston*, 320

11  F.3d 11 (1st Cir. 2003) (claimant had already been granted long-term benefits that were

12  later erroneously denied) 320 F.3d at 11.

13       Parker contends that the opinions of Dr. Zide and Dr. Mendelssohn should not trump

14  the conclusions of his treating providers, since they only reviewed the medical records and

15  did not actually examine Parker.  Parker relies on the conclusions of Dr. Owen and Dr.

16  Wirth, who both found him incapable of participating in gainful employment. Third, Parker

17  argues that Dr. Mendelssohn did not consider the Mental Disorder Questionnaire

18  completed by his psychologist, Dr. Wirth.  Parker argues that this was an important

19  document and that its contents should necessarily be mentioned in the review.

20       Fourth, Parker argues that his application for Social Security disability benefits has

21  been approved and that the threshold for disability under Social Security is higher than that

22  for ERISA disability benefits.  Parker argues that this fact entitles him to benefits in this

23  matter. He specifically asks this Court to award him benefits, offset by his Social Security

24  disability, retroactive to September 3, 2002, and future benefits as long as he continues to

25  meet the terms and conditions of the policy. He also requests prejudgment interest and

26  attorney's fees.

27                              **Legal Analysis**

28       Summary Judgment

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Although this matter is before the Court on cross-motions for summary judgment,

2    the usual summary judgment standard under Rule 56 is not involved in this ERISA action.

3    When an abuse of discretion standard is applied to a decision denying benefits, "a motion

4    for summary judgment is merely the conduit to bring the legal question before the district

5    court and the usual tests of summary judgment, such as whether a genuine dispute of

6    material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th

7    Cir. 1999).

8    This Court's analysis is limited to the record before the administrator at the time of

9    the denial of benefits, and the additional information generated by the subsequent review,

10   after the Court, at its discretion, remanded Parker's appeal for reconsideration by different

11   reviewers in light of Parker's correct job title. The Ninth Circuit in *Mongeluzo* adopted " 'a

12   scope of review that permits the district court in its discretion to allow evidence that was not

13   before the plan administrator.' " *Mongeluzo v. Baxter Travenol Long Term Disability Benefit*

14   *Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995) (internal citation omitted). The court qualified this

15   exception stating that "[t]he district court should exercise its discretion, however, only when

16   circumstances clearly establish that additional evidence is necessary to conduct an

17   adequate de novo review of the benefit decision." *Id.* at 944.

18   This Court in its previous order remanded Parker's claim for review by different

19   examiners, including a specialist in infectious diseases and a specialist in clinical

20   psychology and neuropsychology. (Order issued December 15, 2004, Docket #34).

21   ERISA Review

22   A denial of ERISA benefits shall be reviewed *de novo*, unless "the benefit plan gives

23   the administrator or fiduciary discretionary authority to determine eligibility benefits or

24   construe the terms of the plan." *Firestone v. Acuson Corp. LTD Plan*, 326 F. Supp. 2d

25   1040, 1048 (N.D. Cal 2004) (*quoting Firestone Tire and Rubber Co. v. Bruch*, 489 U.S.

26   101, 115 (1989)).  If the benefit plan does confer discretion, a reviewing court must apply

27   an abuse of discretion standard.  *Id.* (*citing Kearney v. Standard Ins. Co.*, 175 F.3d 1084,

28   1089 (9th Cir. 1999)). The Verizon plan administered by KNS confers discretion on the plan

administrator.        Verizon Wireless Manager Disability Summary Plan Description, Ex. 1

United States District Court
For the Northern District of California

1   to Defendant's Notice of Motion and Motion for Summary Judgment, filed September 14,

2   2004 (Docket # 23).

3       Under the abuse of discretion standard, the court's review is limited to the

4   administrative record, and the decision of an administrator will not be disturbed unless the

5   court determines that the decision was arbitrary or capricious.  *Id.* (*citing McKenzie v. Gen.*

6   *Tel. Co. of Cal.*, 41 F.3d 1310, 1316 (9th Cir. 1994)).  "The touchstone of arbitrary and

7   capricious conduct is unreasonableness." *Id.* (*quoting Clark v. Wash. Teamsters Welfare*

8   *Trust*, 8 F.3d 1429, 1431 (9th Cir. 1993)).

9       Under the abuse of discretion standard of review, an administrator's decision must

10  be upheld unless it is not grounded on any reasonable basis. *Horan v. Kaiser Steel*

11  *Retirement Plan*, 947 F.2d 1412, 1417 (9th Cir.1991). A court may not substitute its own

12  judgment for that of the administrator unless the administrator relied on clearly erroneous

13  findings of fact, rendered its decision without any explanation, or construed provisions of

14  the plan in a way that conflicts with the plain language of the plan. *Bendixen*, 185 F.3d at

15  944. When there is conflicting evidence before the administrator, even decisions directly

16  contrary to some evidence in the record do not necessarily amount to an abuse of

17  discretion. See *Taft v. Equitable Life Assurance Society*, 9 F.3d 1469, 1472-73 (9th

18  Cir.1993). While a plaintiff may take issue with a plan's reliance on opinions that conflict

19  with the treating physicians' opinions, this, however, does not amount to an abuse of

20  discretion. *See Taft*, 9 F.3d at 1473.

21      Discretionary Authority

22      Defendant makes a convincing showing that Verizon's Plan confers discretionary

23  authority on the Claim Administrator to determine whether a claimant is disabled and

24  entitled to benefits.  (Defendant's Motion filed September 14, 2004 at Ex. 1, Plan Summary

25  Description)  Parker cites the same standard for arbitrary and capricious conduct,

26  acknowledging that the Plan Administrator has discretionary authority. (Plaintiff's 2004 MSJ

27  at p. 8 *et seq.*)

28      Treating Physicians v. Peer Review Physicians

United States District Court

For the Northern District of California

1    Parker argues that the opinion of the treating physician should not be ignored

2  without contradictory medical evidence.  Yet in *Firestone*, the fact that a reviewing

3  physician disagrees with the conclusion of an examining physician is not sufficient to

4  overturn a decision as arbitrary and capricious.  326 F. Supp. 2d 1040.  *See also Black and*

5  *Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), in which the U.S. Supreme Court held

6  that plan administrators "are not obliged to accord special deference to the opinions of

7  treating physicians."

8    Parker relies on a Maine District Court case to argue that an insurer may not

9  disregard the opinion of a treating physician in the absence of medical evidence to the

10  contrary.  *Curtin v. Unum Life Insurance*, 298 F. Supp. 2d 149 (D.Me. 2004) (interpreting

11  Supreme Court decision in *Black and Decker* as not allowing an insurer to disregard the

12  opinion of a treating physician in the absence of medical evidence contrary to the treating

13  physician's opinion. *Id.* at 157.

14    Prior to the Supreme Court's decision in *Black & Decker*, the Ninth Circuit applied

15  the treating physician rule in ERISA disability cases. *See Regula v. Delta Family-Care*

16  *Disability Survivorship Plan*, 266 F.3d 1130 (9th Cir.2001), vacated, 539 U.S. 901 (2003).

17  Under this rule, the opinions of a claimant's treating physician were given special deference

18  and may be disregarded only for clear and convincing reasons based on substantial

19  evidence in the record. *See Regula*, 266 F.3d at 1140.

20    In *Black & Decker*, the Supreme Court rejected this rule, holding that "ERISA and

21  the Secretary of Labor's regulations" implementing the statute "do not command plan

22  administrators to credit the opinions of treating physicians over other evidence relevant to

23  the claimant's medical condition." 538 U.S. at 825.

24    Plaintiff in the case at bar appears to be asking the Court to adopt the "treating

25  physician rule" applied in Social Security cases. Under this rule, an administrative law judge

26  (ALJ) is required to give more weight to opinions from treating doctors. If the ALJ rejects

27  the treating doctor's opinion, he or she must set forth specific, legitimate reasons for doing

28  so supported by substantial evidence in the record. See20 C.F.R. § 404.1527(d). *See also*

*Smolen v. Chater*, 80 F.3d 1273 (9th Cir.1996). The Ninth Circuit has stated that requiring

United States District Court

For the Northern District of California

1    ERISA fiduciaries to follow Social Security Administration decisions regarding Social

2    Security benefits would strip the fiduciaries of their administrative discretion. *Madden v. ITT*

3    *Long Term Disability Plan*, 914 F.2d 1279, 1286 (9th Cir.1990). Under ERISA, the

4    administrator's duty is to determine eligibility for benefits under the terms of the plan. In

5    Social Security cases, the duty of the ALJ is to apply the statutory and regulatory standards

6    under Social Security law. For this reason, the Court declines to apply the Social Security

7    "treating physician rule" in this ERISA case.

8          In the case at bar, the reviewing professionals, Dr. Zide and Dr. Mendelssohn,

9    credited the symptoms cited by the treating physicians, but either found them

10   unsubstantiated by objective medical evidence or found that they did not rise to the level of

11   a disability precluding Parker from continued work activity.

12         For example, Dr. Mendelssohn cited to Dr. Owen's report noting a lack of objective

13   measures of Parker's depression, anxiety, decreased focus, decreasing coping with stress,

14   loss of energy, loss of appetite, increased sleep, and difficulty controlling anger.  (Ostly

15   2005 Dec. Ex. A, STD 638-39).  Both reviewing physicians concluded that the medical

16   record contains insufficient objective medical evidence of how Parker's symptoms affected

17   his ability to engage in sustained work activity during the time period in question.

18         <u>Dr. Zide</u>

19         Dr. Zide found that the medical records did not indicate any associated illness from

20   Parker's HIV/AIDS diagnosis, and inadequate verification that Parker had AIDS. Dr. Zide

21   found little relation between Parker's HIV/AIDS and the symptoms described. Parker

22   contends that no direct relationship is required and the symptoms, regardless of their

23   cause, reflect Parker's disability. Defendant states that these physical symptoms (diarrhea

24   and fatigue) whether caused by Parker's medications or not, have never been a basis for

25   Parker's disability claim and that the claim is based upon claimant's psychological

26   problems. Dr. Zide noted that the record did not indicate whether Parker's symptoms were

27   caused by his medication. Dr. Zide noted the different medications taken by the Parker and

28   finds a remote likelihood that his medications caused any of his physical symptoms with the

     possible exception of his diarrhea. Dr. Zide again noted the lack of objective medical

United States District Court
For the Northern District of California

1  evidence regarding this symptom. Regardless, Dr. Zide found a lack of objective medical

2  evidence as to the frequency and severity of these symptoms, especially relating to how

3  these symptoms hindered his ability to engage in sustained work activity.

4       Dr. Mendelssohn

5       Dr. Mendelssohn disagreed with the medical conclusions of Dr. Wirth, Parker's

6  psychologist, as the symptoms listed by Dr. Wirth appeared self-reported by Parker and

7  were not supported by any objective testing to show that Parker was disabled.  Parker

8  again contends that no objective proof of symptoms is required where no medical or

9  psychological evidence to the contrary exists. Dr. Mendelssohn's review did not appear to

10 doubt the symptoms, but instead indicated that Parker's psychological condition was

11 improving in a manner that did not suggest permanent or temporary disability. Moreover,

12 Dr. Mendelssohn cited the lack of objective evidence regarding the frequency and severity

13 of these symptoms, especially as they relate to a lack of objective evidence as to how the

14 symptoms affect Parker's ability to engage in work activity.  For example, in support of

15 Parker's claim Dr. Wirth cited Parker's decreased concentration, but failed to conduct any

16 tests regarding this symptom.  Dr. Mendelssohn's review focused on the lack of objective

17 medical testimony regarding decreased concentration along with panic attacks, cognitive

18 difficulties or impairments in emotional functioning.

19      Arbitrary and Capricious Standard

20      Parker's disagreement with the ultimate conclusions of the reviewers does not show

21 that their decisions were arbitrary or capricious. Parker argues that Defendant initially

22 granted him disability benefits, only to deny his claim later. Parker argues that his claim

23 mirrors the case in *Cook* where a claimant had already been granted long-term benefits

24 that were later erroneously denied. 320 F.3d at 11. The *Cook* case does not apply here as

25 Defendant only granted Parker's application for disability benefits temporarily, for a period

26 of less than one month, pending the submission of additional medical information.

27 Ultimately, Defendant terminated Parker's benefits due to his failure to submit sufficient

28 medical records. Nevertheless, the basis for this summary judgment motion concerns the

findings of the reviewing examiners and not Parker's initial claim for disability.

United States District Court
For the Northern District of California

1    <u>Independent Medical Examination</u>

2        The employment of two reviewing physicians to analyze the available medical record

3    complies with the Court's previous instructions and no independent medical examination of

4    Parker is required. *Nicula v. First UNUM Life Ins. Co.*, 23 Fed.Appx. 805, 807, 2001 WL

5    1631806 (9th Cir. 2001).  Moreover, the Court's previous instructions to the parties did not

6    require that Defendant conduct its own medical examination of Parker in order to properly

7    review Parker's claim.  Defendant has discretionary authority over the administration of

8    Parker's claim and may choose whether to conduct its own medical examination of Parker.

9        <u>Social Security Disability</u>

10       This Court notes that Parker received disability benefits under Social Security.

11   Parker correctly points out that the standard for proving disability for Social Security

12   benefits is generally higher than for ERISA benefits. Yet, this Court is limited by the

13   administrative record and the decisions made by the previous administrators. This Court

14   also notes the different procedures and rules which distinguish ERISA from Social Security

15   cases. The Court cannot assume that the record before this Court is the same as the

16   record before the Social Security administrator.

17       <u>Sufficient Time to Submit Materials</u>

18       After both the initial determination and the appeal of Parker's claim for disability

19   benefits, Defendant was late in sending Parker a copy of his file. This Court previously

20   instructed Defendant to review Parker's request for benefits with a new physician and to

21   allow Parker the time to submit all relevant medical evidence. This order by the Court took

22   into account any previous prejudice suffered by Parker.  Both sides complied with the

23   Court's order.  Parker received an adequate opportunity to compile a complete medical

24   record regarding his claimed disabilities for the subsequent review.  Any prejudice from the

25   prior delay was alleviated.

26                                   **Conclusion**

27       After the initial claims process and subsequent reviews, the administrator of

28   Verizon's Plan found insufficient objective evidence that Parker suffered from a disability

     that prevented him from working beyond September 3, 2002.  Defendant properly complied

1   with the Court's order in reviewing Parker's claim again.  Two physicians and a

2   psychologist, upon analyzing the medical record including all additional documentation

3   Parker submitted, arrived at the same conclusion that Parker failed to show proof of

4   disability beyond September 3, 2002. The Court finds that Parker's arguments regarding

5   his Social Security benefits, the late return of the case file and the lack of an independent

6   medical examination by the insurer are all issues outside the proper scope of the Court's

7   review of the merits of the parties' summary judgment motions. The Court also finds that

8   the burden rests on Parker to show that the reviewing physicians and psychologist and the

9   administrator acted in an arbitrary and capricious manner. Parker failed to meet this

10  burden. This Court therefore grants Defendant's motion for summary judgment and denies

11  Plaintiff's motion. Judgment shall be entered for Defendant. The clerk shall close the file.

12          IT IS SO ORDERED.

13          DATED: July 7, 2006

14                                              _____

15                                                      James Larson
                                                    Chief Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California